UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO, DARIN
JEFFERS, MICHAEL O'TOOLE, MICHAEL
BOURGAL, FRANK H. FINKEL, JOSEPH A.
FERRARA, SR., MARC HERBST, THOMAS CORBETT
and ROBERT G. WESSELS, as Trustees and fiduciaries
of the Local 282 Welfare Trust Fund, the Local 282 Pension          **REPORT AND**
Trust Fund, the Local 282 Annuity Trust Fund, the Local            **RECOMMENDATION**
282 Job Training Trust Fund, and the Local 282 Vacation
and Sick Leave Trust Fund,                                          CV 20-5969 (EK)(ARL)

                                        Plaintiffs,

                        -against-

DOUBLE A CONTRACTING, INC.

                                        Defendant.
------------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

    Plaintiffs, Thomas Gesualdi, Louis Bisignano, Darin Jeffers, Michael O'Toole, Michael

Bourgal, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Thomas Corbett and Robert G.

Wessels, as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension

Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the

Local 282 Vacation and Sick Leave Trust Fund, (collectively, "Plaintiffs") commenced this

action against Double A Contracting, Inc. ("Defendant") for violations of the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1145 and § 1132(a), *et seq.* ("ERISA") and

the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"). Defendant has not

answered or moved with respect to the complaint. On May 7, 2021, Plaintiffs moved for entry of

a default judgment against Defendant. By Order dated May 7, 2021, Judge Komitee referred

Plaintiffs' motion for default judgment to this Court. Based upon the information submitted by

Plaintiffs, and for the reasons set forth below, the Court respectfully recommends that Plaintiffs'

motion for a default judgment be granted, Plaintiffs request for injunctive relief be denied and Plaintiffs be awarded: (1) $3,586.33 in interest on late contributions and (2) $12,963.51 in attorneys' fees and costs, with leave to renew the application for damages.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the complaint as well as the motion for default judgment and the exhibits attached to the motion.

Plaintiffs are trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Funds") within the meaning of 29 U.S.C. § 1002(21)(A).  Compl. ¶ 5.  The Funds are "employee benefit plans" and "multi-employer plans" within the meaning of 29 U.S.C. §§ 1002(3) and (37).  *Id.* at ¶ 6.  The Funds are maintained pursuant to the terms of an Amended and Restated Agreement and Declaration of Trust that became effective on April 13, 2013, for the purposes of collecting and receiving contributions from employers bound to collective bargaining or participation agreements with the Mechanical Trade Contractor's Association, Inc., Local 282, International Brotherhood of Teamsters (the "Union").  *Id.* at ¶ 9; Puccio Decl. Ex. 1.

Defendant is a New York corporation engaged in the transportation of building materials and is an employer within the meaning of 29 U.S.C. § 1002(5).  Compl. ¶¶ 11-13.  Defendant executed a collective bargaining agreement with the Union  (the "CBA").  Puccio Decl. ¶ 6, Ex. 2.  The duration of the CBA is July 1, 2017 through June 30, 2021.  *Id.*  The CBA and Trust Agreement required Defendant (1) to make contributions to the Funds on behalf of its workers who perform work covered by the CBA, at specified rates for each hour of covered work, subject

2

to certain limitations set forth in the CBA and to pay a penalty for late payments; (2) to submit remittance reports to the Funds and to pay a late penalty in the event the remittance reports are not submitted within 20 days of written demand, and (3) to permit the Funds to conduct audits of Defendant's books and records.  Compl. ¶¶ 17-20, 24.  Plaintiffs seek to recover from Defendant on the basis of several alleged failures.

### Audit No. 20-0119 (period January 2018 through March 2019)

Plaintiffs allege that that Defendant has failed to pay amounts which were due as a result of an audit for the period January 1, 2018 through March 3, 2019.  *Id.* at ¶¶ 33-34.  Specifically, Plaintiffs assert that "pursuant to the collective bargaining agreement, the Trust Agreement and Audit No. 20-0119, Double A Contracting Inc. owes Nine Hundred Fifty-Six Dollars, Thirty-One Cents ($956.31). and interest yet to be calculated but no amount less than One Hundred Ninety-Five Dollars, Ninety-Five Cents ($195.95). Interest has accrued and continues to accrue in delinquent contributions until they are received by the Funds. To date, although the audit was provided to Double A Contracting Inc., the payment has not been made."  Puccio Decl. ¶ 26.

### Late Contributions (period June 2018 through December 2019)

Plaintiffs also allege that Defendant submitted contributions late from June 2018 through December 2019.  .  In the Complaint, Plaintiffs allege that "to date, interest owed on late-paid contributions for the period of December 2018 through December 2019 is no less than $41,676.49."  Compl. ¶ 37.  In the Puccio Declaration, Plaintiff's claim that "to date, interest owed on late-paid contributions for the period of December 2018 through December 2019 is no less than $8,196.72."  Puccio Dec. ¶ 29. According to Plaintiffs, "[t]he Funds Office sent Double A Contracting Inc. a January 17, 2020 letter demanding payment of the late interest. . . . Double A Contracting Inc. ignored the letter and has not paid interest.  Per the Trust Agreement the

3

Funds are entitled to collect liquidated damages for late-paid contributions equal to the greater of the amount of interest charged on the unpaid contributions or twenty percent of the unpaid contribution." *Id*. at  ¶¶ 29-31.  Attached to the Puccio Declaration is a letter from the Funds dated January 17, 2020 indicating that Plaintiffs had demanded interest on late payments in the amount of $3,586.53.  *Id*. at Ex. 5.

### Failed to Submit Remittance Reports (period July 2020 through August 2020)

In addition, Plaintiffs allege that Defendant has failed to submit remittance reports for the months July 2020 and August 2020.  Plaintiffs allege that they have "demanded the missing remittance reports. Double A Contracting Inc. failed to submit these remittance reports."  *Id*. at ¶¶ 34-35.

### Underpaid and Unpaid Contributions (period December 2018 through June 2019)

Plaintiffs further allege that Defendant has underpaid or left unpaid contributions from December 2018 through June 2020.  Defendant "submitted remittance reports to the Funds, self-reporting contributions due and owing to the Funds, but failed to remit full payment of those contributions or for some months failed to make any payments at all." *Id*. at  ¶45.  In the Complaint, Plaintiffs seek unpaid contributions "[f]or the period of November 2018 through June 2020 [of] no less than Two Hundred Fifty-Two Thousand, Two Hundred Forty-Five Dollars and Sixteen Cents ($252,245.16)."  Compl. ¶ 46.  In the Puccio Declaration, Plaintiffs contend the "[f]or the period December 2018 through June 2020 Double A Contracting Inc. owes no less than Two Hundred Twenty Three Thousand Thirty-One Dollars and Thirty-Eight Cents ($223,031.38) in unpaid contributions." *Id*. at ¶ 46.

### Breach of 2019 Agreement (period April 2017 through October 2018)

In addition to the deficiencies noted above, Plaintiffs also allege that Defendant breached a settlement agreement entered in March 2019 by Plaintiffs and Double A Contracting Inc. for April 2017 through October 2018 delinquencies (the "2019 Agreement"). *Id*. at ¶¶ 49-55. According to Plaintiffs, "[i]n the 2019 Agreement, Double A Contracting Inc. acknowledged it owes the Plaintiffs $190,317.79, consisting of $151,356.21 in contributions based on remittance reports for the period April 2018 through October 2018, $37,963.44 in interest on late-paid and unpaid contributions for the months April 2017 through October 2018, plus $998.14 in contributions and interest due pursuant to Audit #18-0908." *Id*. at ¶ 43. Plaintiffs claim that "[f]or breach of the 2019 Agreement, Double A Contracting Inc. owes Plaintiffs $190,317.79, less $98,345.00 settlement payments made, for a total $91,972.79, plus additional accrued interest due thereon and on the prior declining balance, liquidated damages, attorneys' fees, and costs per the Trust Agreement and 29 U.S.C. § 1132." *Id*. at ¶ 48.

### **Request for An Audit (period March 2019 through March 2020)**

Finally, Plaintiffs contend that Defendant has failed to submit to an audit for the period March 4, 2019 through March 31, 2020. Plaintiffs argue that "by letter dated August 5, 2020, Defendant was notified of its failure to submit to audit." *Id*. at ¶¶ 56-60. According to Plaintiffs Defendants have not submitted to the audit.

Based upon these allegations, Plaintiffs assert claims against Defendant for violation of ERISA, the LMRA and breach of the 2019 Agreement.

## II.    Procedural Background

Plaintiffs filed the complaint in this action on December 8, 2020. ECF No. 1. The summons and complaint were served on Defendant on December 15, 2020. ECF No. 6. Defendant never answered or otherwise responded to the Complaint. On February 5, 2021,

Plaintiffs filed a request for a certificate of default with the Clerk of Court.  ECF No. 7.  The Clerk of Court issued the certificate of default on February 12, 2021.  ECF No. 8.

On May 7, 2021, Plaintiffs filed a motion for a default judgment.  ECF No. 10.  The motion was served on Defendant.  ECF No. 14.  By Order dated May 7, 2021, Judge Komitee referred Plaintiffs' motion to the undersigned.  Defendant has not opposed the motion for default judgment or responded in any way.

## DISCUSSION

### I.   Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments.  First, the Clerk of the Court enters the party's default.  Then, as here, a motion for a default judgment is made to the district court judge.  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007)  ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true").  However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted).

In addition, in the context of a motion for default judgment, conclusory allegations cannot establish that the defaulting party is liable as a matter of law.  *See E.A. Sween Co., Inc. v.*

6

*A&M Deli Express Inc*., 787 F. App'x 780, 782 (2d Cir. 2019) (summary order) ("A defaulting party admits only well-pleaded factual allegations; it does not admit conclusory allegations or legal conclusions.").  "Conclusory allegations based on information and belief" are generally insufficient to support a finding of default-based liability.  *J&J Sports Prods., Inc. v. Daley*, No. 06-CV-0238, 2007 U.S. Dist. LEXIS 49839, 2007 WL 7135707, at \*3-4 (E.D.N.Y. Feb. 15, 2007).   However, allegations on information and belief may be sufficient to hold a defendant individually liable on a default judgment where such allegations state facts primarily within the defendant's knowledge. *See Joe Hand Promotions, Inc. v. Blais*, No. 11 Civ. 1214, 2013 U.S. Dist. LEXIS 142427, 2013 WL 5447391, at \*3 (E.D.N.Y. Sept. 10, 2013) (deeming admitted allegations pled on information and belief in default judgment context) (*citing Fong v. United States,* 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge)); *see also Sexy Hair Concepts, LLC v. Sexy Hair Inc*., No. 12 Civ. 3937, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at \*4 (E.D.N.Y. Sept. 30, 2013) (deeming admitted allegation on information and belief that defendant owned corporate entity and directed and controlled the activity of the business in default judgment context).

A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  With respect to damages, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

**II.    Liability**

**A. ERISA**

Accepting the allegations in the Complaint as true, Plaintiffs have asserted valid claims under ERISA. ERISA requires employers to pay fringe benefit contributions pursuant to a valid collective bargaining agreement. 29 U.SC. § 1145. Specifically, the statute states that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In addition, the CBA and Trust Agreement require Defendant to complete remittance reports by reporting the CBA covered employee hours and return the report with payment to the Funds. Puccio Decl. ¶ 9.

Here, Plaintiffs have asserted that Defendant has failed to (i) submit contributions owed pursuant to remittance reports for the period of November 2018 through June 2020; (2) submit timely contributions for the period of April 2018 through December 2019; (3) pay contributions due and owing pursuant to Audit No. 20-0119; (4) submit the contributions under the 2019 Agreement, and (5) submit remittance reports for July and August 2020. In support of the motion for default, Plaintiffs rely upon the Declaration of Christopher Smith dated May 6, 2021 and the Declaration of Joseph Puccio dated April 29, 2021. ECF Nos. 11 & 12. Plaintiffs have sufficiently set forth the elements of a claim for liability under ERISA against Defendant.

**B. LMRA**

Plaintiffs have also alleged a valid cause of action under the LMRA. Section 301 of the LMRA provides a cause of action against an employer in an industry affecting commerce for the "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments

or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement." *Sullivan v. Marble Unique Corp*., No. 10 Civ. 3582 (NGG) (LB), 2011 U.S. Dist. LEXIS 129867, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011), report and recommendation adopted, 2011 U.S. Dist. LEXIS 127847, 2011 WL 5402898 (Nov. 4, 2011).

Here, Defendant is alleged to be an employer in an industry affecting commerce within the meaning of the LMRA. Compl. ¶ 12.  In addition, Defendant is bound by the CBA.  *Id*. at ¶ 12.  Plaintiffs allege that Defendant failed to submit all required remittance reports and to submit to audit, as well as failed to pay all required remittance contributions.  *Id*. at ¶¶ 28-48. These allegations are sufficient to establish liability under the LMRA.  *See, e.g., Trs. of the Local 183 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.,* No. 16 Civ. 318 (SJ) (SJB), 2018 WL 4268907, at *3-4 (E.D.N.Y. Aug. 8, 2018) (recommending that an employer's failure to pay dues and assessments pursuant to a collective-bargaining agreement constitutes a breach of the LMRA), R&R adopted, 2018 WL 4266038 (Sept. 5, 2018).  Plaintiffs have sufficiently set forth the elements of a claim for liability under the LMRA against Defendant.

### C.  Breach of the 2019 Agreement

Plaintiffs also assert a claim against Defendant for breach to the 2019 Agreement.  A settlement agreement is a contract that "[o]nce entered into . . . is binding and conclusive." *Powell v. Omnicon*, 497 F.3d 124, 128 (2d Cir. 2007).  "Where the language used in the signed release or settlement is clear and unambiguous, summary enforcement is appropriate."  *Builders Bank v. Newland Group, LLC,* No. 09-cv-4314 (DLI)(CLP), 2013 WL 394218, at *5 (E.D.N.Y. Jan. 31, 2013) (internal quotation marks and citations omitted).  Additionally, "[s]tipulations of settlement are favored by the courts and not lightly cast aside."  *BCM Development, LLC v.*

9

*Oprandy*, No. 12-573-cv, 2013 WL 174102, at *1 (2d Cir. Jan. 17, 2013) (summary order) (internal quotation marks and citation omitted); *see Builders Bank*, 2013 WL 394218, at *5 (same).  "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation."  *Id.* (internal quotation marks and citation omitted).

Here, Plaintiffs have established that the parties entered into a written settlement agreement under which Defendant agreed to pay Plaintiffs $190,317.79, consisting of $151,356.21 in contributions based on remittance reports for the period April 2018 through October 2018, $37,963.44 in interest on late-paid and unpaid contributions for the months April 2017 through October 2018, plus $998.14 in contributions and interest due pursuant to Audit #18-0908.  Puccio Decl. ¶ 43.  Plaintiffs have alleged that Defendant failed to make the required payments in accordance with the 2019 Agreement and, therefore, are in violation of that agreement.  Plaintiffs gave notice of the default, but Defendant failed to cure the default after notice was provided pursuant to the 2019 Agreement.  This failure constituted a default under the terms of the agreement.  In addition, Defendant has not disputed this default, nor have they formally responded to Plaintiffs' motion for entry of judgment.  Plaintiffs have sufficiently set forth the elements of a claim for breach of the 2019 Agreement.

In light of the foregoing, the undersigned respectfully recommends that Plaintiffs' motion for default judgment be granted.

## III.    Damages

ERISA provides a right of recovery to plaintiffs who have established liability under Section 515 for unpaid contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as the court may deem appropriate.  29 U.S.C. §

1132(g)(2).  In support of their request for an award of damages, Plaintiffs have submitted the Declaration of  Christopher Smith dated May 6, 2021 and the Declaration of Joseph Puccio dated April 29, 2021.  ECF Nos. 11 & 12.  Attached to the Puccio Declaration are copies of the applicable Trust Agreement, collective bargaining agreement, the 2019 Agreement and letters sent by the Funds to Defendant, which set forth Defendant's contribution obligations to the Funds and the Funds' various demands for payment.  The Court will determine damages based on the documentary evidence.

"Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not." *Labarbera v. Frank J. Batchelder Transp. LLC*, No. 08 CV 3387 (SJ)(JMA), 2009 U.S. Dist. LEXIS 7072, 2009 WL 240521, at *3 (E.D.N.Y. Feb. 2, 2009) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "Rather, the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds v. Midwest REM Enters.*, No. 20-cv-05896 (KAM), 2021 U.S. Dist. LEXIS 125474 (E.D.N.Y. July 6, 2021) (citing *Credit Lyonnais*, 183 F.3d at 155).  While the Court need not hold a hearing to determine damages, "[e]ven in the absence of a hearing, . . . the district court cannot simply rely on the plaintiff's statement of damages." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. Jan. 4, 2010) (summary order) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  "Proof of damages must therefore be based on admissible, authenticated evidence." *Bd. of Trs. of the United Union of Roofers v. Dana Restoration, Inc.,* No. 09-cv-1076 (RRM)(ALC), 2010 U.S. Dist. LEXIS 103211, 2010 WL 3925115, at *2 (E.D.N.Y. Sept. 14, 2010).

A.     **Audit No. 20-0119**

Plaintiffs allege that Defendant failed to pay any amounts which were due as a result of an audit for the period January 1, 2018 through March 3, 2019. Compl. ¶¶ 33-34. Specifically, Plaintiffs assert that "pursuant to the collective bargaining agreement, the Trust Agreement and Audit No. 20-0119, Double A Contracting Inc. owes Nine Hundred Fifty-Six Dollars, Thirty-One Cents ($956.31) and interest yet to be calculated but no amount less than One Hundred Ninety-Five Dollars, Ninety-Five Cents ($195.95). Interest has accrued and continues to accrue on delinquent contributions until they are received by the Funds. To date, although the audit was provided to Double A Contracting Inc., the payment has not been made." Puccio Decl. ¶ 26 Plaintiffs have failed to provide any admissible evidence supporting this claim. Specifically, Plaintiffs have failed to provide the audit report or any accounting of payments made pursuant to the audit. Accordingly, the undersigned recommends that Plaintiffs' claim for the recovery of the amounts due pursuant to Audit No, 20-0119 be denied, with leave to renew.

B.     **Interest on Late Contributions**

Plaintiffs allege that Defendant submitted contributions late from June 2018 through December 2019. Compl. at ¶¶ 35-38. In the Complaint, Plaintiffs allege that "to date, interest owed on late-paid contributions for the period of December 2018 through December 2019 is no less than $41,676.49." Compl. ¶ 37. In the Puccio Declaration, Plaintiff's claim that "to date, interest owed on late-paid contributions for the period of December 2018 through December 2019 is no less than $8,196.72." Puccio Dec. ¶ 29. The Puccio Declaration also claims "[p]er the Trust Agreement the Funds are entitled to collect liquidated damages for late-paid contributions equal to the greater of the amount of interest charged on the unpaid contributions or twenty percent of the unpaid contribution." *Id*. at ¶ 31.

Exhibit 5 to the Puccio Declaration sets forth certain late payments made by Defendant between December 2018 and April 2019.  The letter, dated January 17, 2020, attached as Exhibit 5 requests interest on the late payments at the rate of 18% per annum totaling $3,586.53.  *Id.* Plaintiff has failed to provide any evidence of additional late contributions beyond those identified in the January 17, 2020 letter.  Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $3,586.53 as interest on late payments.

### C.      Unpaid Contributions

ERISA section 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), provides for an award of unpaid contributions by Defendant.  The Trust Agreement does as well.  In the Complaint, Plaintiffs seek unpaid contributions "[f]or the period of November 2018 through June 2020 [of] no less than Two Hundred Fifty-Two Thousand, Two Hundred Forty-Five Dollars and Sixteen Cents ($252,245.16)."  Compl. ¶ 46.  In the Puccio Declaration, Plaintiffs request unpaid contributions in the amount of $233,031.38 for the period December 2018 through June 2020.  According to the Puccio Declaration these amounts are due based upon the remittance reports provided by Defendant.  Puccio Decl. ¶¶ 38-41.   Plaintiffs have failed to provide any evidentiary support for the request for these unpaid contributions, accordingly, the undersigned recommends that Plaintiffs' request for unpaid contributions be denied, with leave to renew.[1]

### D.      Breach of the 2019 Agreement

Plaintiffs seek payment of the full amount agreed to under the 2019 Agreement, which according to Plaintiffs, Defendant "owes Plaintiffs $190,317.79, less $98,345.00 settlement payments made, for a total $91,972.79, plus additional accrued interest due thereon and on the prior declining balance, liquidated damages, attorneys' fees, and costs per the Trust Agreement

---

[1] Because Plaintiffs have failed to offer evidence of unpaid contribution, their request for interest and liquidated damages with respect to the unpaid contributions should also be denied, with leave to renew.

and 29 U.S.C. § 1132." Compl, ¶ 48. Plaintiffs have, once again, failed to offer any evidence of payments made, or missed, in accordance with the 2019 Agreement. Plaintiffs have also failed to provide a calculation of interest or liquidated damages requested on the alleged unpaid settlement amount. Accordingly, the undersigned respectfully recommends that Plaintiffs' request for compensation for breach of the 2019 Agreement be denied, with leave to renew.[2]

### E.    Attorneys' Fees and Costs

Section 502(g)(2) of ERISA mandates awarding reasonable attorneys' fees and costs in ERISA matters brought by fiduciaries to enforce the terms of the CBA. 29 U.S.C. § 1132(g)(2)(D). As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court held that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been

---

[2] In addition, the Court notes that Plaintiffs appear to be requesting reimbursement for unpaid contributions for the same months on different grounds. For example, Plaintiffs allege that Defendant has failed to make contributions found to be due in an audit for the period January 2018 through March 2019. Compl. ¶¶ 33-34. However, Plaintiffs are also seeking to be reimbursed for unpaid contributions beginning in November 2018 and continuing through June 2020 which would overlap with the period of Audit 20-0119. *Id.* at ¶¶ 38-41. Similarly, Plaintiffs are claiming interest on late payments made between January 2018 and December 2019, while claiming reimbursement for unpaid contributions from December 2018 through June 2019. *Compare* Compl. at ¶¶ 38-41 *with* Compl. at 29-31. Additionally, Plaintiffs are asking this Court to provide injunctive relief by requiring Defendant to submit to an audit for the period of March 2019 through March 2020, while claiming unpaid or underpaid contributions for an overlapping period. The undersigned recommends that to the extent Plaintiffs are directed to submit a renewed motion for damages, these inconsistencies be rectified.

representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. Ex rel. Winn.,* 559 U.S. 542, 551 (2010) (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id.* at 553 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York,* 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue,* 559 U.S. at 552.

In the present case, Plaintiffs retained the services of Trivella & Forte, LLP ("Trivella"). Trivella billed the Funds for legal services totaling $13,656.00 and costs in the amount of $843.51 for the period August 2020 through May 2021. To support Plaintiffs' request for

attorneys' fees and costs, Plaintiffs submitted the Declaration of Christopher Smith of Trivella, with contemporaneous billing records annexed to the affirmation.  *See* ECF No. 11, Ex. D.  The itemization reflects that one attorney, one paralegal and one legal secretary worked on this case.

The Court finds that Plaintiffs' submission provides sufficient evidence to form the basis for an award of damages without a further hearing.  Plaintiffs seek reimbursement for legal services rendered by Christopher Smith, an attorney who has represented employee benefit plans for over twenty years, at the rate of $450 per hour, Michelle Salerno, a paralegal, at the rate of $120 per hour, and Anna Chiarolanza, a legal secretary, at the rate of $120 per hour.  ECF No. 11, ¶¶ 18-19.  The Court does not find these rates to be consistent with the rates awarded in this district in ERISA cases.  Courts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in cases such as this. *See Gesualdi v. Burtis Constr. Co.,* No. CV 20-4864 (ARR) (ARL), 2021 U.S. Dist. LEXIS 246876 (E.D.N.Y. Dec. 28, 2021) (reducing rates of Christopher Smith and Michelle Salerno to $400 and $100, respectively); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers , Loc. 15, 15A, 15C & 15D, AFL-CIO v. Genrus Corp*., No. 20 CV4980 MKB RER, 2021 WL 4755704, at *5 (E.D.N.Y. Aug. 16, 2021), report and recommendation adopted sub nom*., Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Genrus Corp*., No. 20 CV 4980 MKB RER, 2021 WL 3928952 (E.D.N.Y. Sept. 2, 2021).  Similarly, courts in this district generally award hourly rates of $200-$300 per hour for senior associates and $100-$200 per hour for junior associates. *See Loc. 1922 Pension Fund v. Broadway Elec. Supply, Co*., No. CV 19 2344 JS AKT, 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020). In fact, in order to account for the relative simplicity of ERISA default cases, courts in this district often approve

rates that are closer to the lower end of this range.  *See Gesualdi v. Seacoast Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 104 (E.D.N.Y. 2015) (citations omitted).  Accordingly, the undersigned recommends that Christopher Smith's rate be adjusted to $400.00, and Michelle Salerno's and Anna Chiarolanza's rates be adjusted to $100.00.

Having determined the reasonable hourly rates to be used in this case, the Court now turns to the reasonableness of the hours billed.  "The number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." *Finkel v. Metro Sign & Maint. Corp.*, No. 09 CV 4416, 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citing *Labrera v. Frank J. Batchelder Transp. LLC*, No. 08–CV–3387, 2009 WL 245021, at *4 (E.D.N.Y. Feb. 2, 2009)).  Here, the record reflects that the attorneys and paralegals spent a total of 32.4 hours on this matter.  Smith Dec., Ex. D.  The time records submitted here describe what tasks were performed on behalf of Plaintiffs, the dates on which such tasks were performed, and the amount of time expended.  Based on the foregoing, it is recommended that Plaintiffs be awarded $12,120 in fees.

Plaintiffs also seek costs in the amount of $843.51.  *See Trs. of Local 7 Tile Industry Welfare Fund v. Amarko Marble & Granite Co.*, No. 13-CV-2779, 2014 WL 1622098, at *11 (E.D.N.Y. Apr. 22, 2014) ("Generally, reasonable costs may be recovered by the prevailing party in an ERISA action.").  Plaintiffs have provided a breakdown in costs and the undersigned finds this amount reasonable.   Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded attorneys' fees and costs in the amount of $12,963.51.

G.     **Injunctive relief**

In addition to damages, Plaintiffs also seek an order requiring Defendant to submit two outstanding remittance reports from July and August 2020 and also to submit to an audit for the

17

period from March 2019 through March 2020.  Compl.  ¶¶ 39-43; 56-60.  In an action brought pursuant to ERISA, a court, in addition to monetary damages, may award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). That relief "may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." *Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-0873 (ENV) (JO), 2010 U.S. Dist. LEXIS 142194, 2010 WL 6267657, at *13-14 (E.D.N.Y. Aug. 12, 2010) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.*, No. 06 CV 2953 (FB)(RML), 2007 U.S. Dist. LEXIS 98867, 2007 WL 2712314, at *5 (E.D.N.Y. July 27, 2007)).

"[B]efore a court may issue an injunction on a motion for default judgment, the moving party must show that '(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" *See La Barbera v. Les Sub-Surface Plumbing, Inc.,* No. 06-CV-3343, 2007 U.S. Dist. LEXIS 98804, 2008 WL 906695, at *10. (E.D.N.Y. April 3, 2008) (quoting *Cablevision of Southern Conn. v. Smith*, 141 F.Supp.2d 277, 287-88 (D. Conn. 2001)). The first condition is met because, as discussed above, audits are permitted under ERISA.  However, "injunctive relief does not follow automatically upon a finding of statutory violations . . . ." *Huntington v. Marsh*, 859 F.2d 1134, 1143 (2d Cir. 1988). Rather, Plaintiff must demonstrate irreparable harm and the absence of an adequate remedy at law. *La Barbera*, 2007 U.S. Dist. LEXIS 98804, 2008 WL 906695, at *10 (citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57, 95 S. Ct. 2069, 45 L. Ed. 2d 12 (1975); *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989)).

Plaintiffs have made no more than a conclusory assertion that "money damages are not sufficient to make the Funds whole" (Pls.' Mem. at 8), and, have failed to articulate why an award under the estimated audit provision in the Trust Agreement is an insufficient remedy at law. *See LaBarbera v. Hardin Contracting, Inc*., No. 07-CV-5063 (ENV)(SMG), 2010 U.S. Dist. LEXIS 2499, 2010 WL 148084, at *4 (E.D.N.Y. Jan. 13, 2010) ("Plaintiffs' conclusory allegations fail to establish irreparable harm and the absence of an adequate remedy at law."). Pursuant to the Trust Agreement and the CBA Plaintiffs are entitled to recover estimated contributions from Defendant in the event Defendant fails to make contributions and fails to submit to an audit.[3] *See Trs. of Empire State Carpenters Annuity v. Gregory*, No. 14 Civ. 2900 (ADS)(SIL), 2015 U.S. Dist. LEXIS 47236, 2015 WL 1611307, at *6 (E.D.N.Y. Apr. 10, 2015) (denying Plaintiffs request for injunctive relief because an adequate remedy existed at law); *Ferrara v. Prof'l Pavers Corp.*, No. 11-CV-1433, 2013 U.S. Dist. LEXIS 45944, 2013 WL 1210522, at *4 (E.D.N.Y. Feb. 15, 2013) ("Plaintiffs have not shown why monetary damages are inadequate where they have availed themselves of the estimated contributions provision, which provides relief for the very period for which Plaintiffs seek an audit"); *Ferrara v. Metro D Excavation & Found., Inc.,* 10 CV 4215, 2011 U.S. Dist. LEXIS 91283, at *24 (E.D.N.Y. July 7, 2011), report and recommendation adopted by 2011 U.S. Dist. LEXIS 91157 (E.D.N.Y., Aug. 16, 2011) (denying request in ERISA case for an order requiring employer to submit to an audit because report already recommended that plaintiff be awarded "estimated unpaid contributions in

---

[3] Article IX, Section 1(e) of the Trust Agreement provides:

In the event the Employer fails to submit the required reports and/or pertinent books and records for audit within twenty (20) days after written demand, the Trustees, or their agents, may compute the sum due for any month by adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) months or fifty two (52) weeks (or any combination thereof) for which reports reflecting at least one hour of covered work performed were submitted by the Employer (hereinafter referred to as the base month).

accordance with the formulas set forth in the trust agreement"); *Gesualdi v. MBM Indus., Inc.*, No. CV-10-2607, 2010 U.S. Dist. LEXIS 93619, at *9 (E.D.N.Y. Sept. 15, 2010) (declining to award equitable relief in ERISA default case where plaintiffs were already recovering estimated damages calculated in accordance with the CBA and Trust Agreement). Cf. *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Arista Plumbing Heating & Piping Corp.,* 12-CV-5130, 2013 U.S. Dist. LEXIS 185821, at *22-*23 (E.D.N.Y. Feb. 10, 2014), report and recommendation, adopted by 2014 U.S. Dist. LEXIS 29098 (E.D.N.Y. Mar. 5, 2014) (granting equitable relief in an ERISA default case because the CBA at issue did not contain an estimated audit provision, resulting in the plaintiff having no remedy at law and necessitating an affirmative injunction to calculate damages).  Accordingly, the undersigned respectfully recommends that Plaintiffs' request for injunctive relief be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below.  Counsel for Plaintiffs shall serve a copy of this Report and Recommendation on the Defendant upon receipt and shall file proof of service with the Court.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
          January 10, 2022
                                                    _____/s/_____
                                                    ARLENE R. LINDSAY
                                                    United States Magistrate Judge